FILED
SUPERIOR COURT
OF GUAM

2021 AUG 10 PM 4: 01

CLERK OF COURT

BY: _____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **JUAN CAMACHO PANGELINAN,** | **CIVIL CASE NO. CV0310-20** |
| **Plaintiff,** | |
| **vs.** | |
| **ANNIE SALAS LUJAN, Administrator of the Estate of Gregorio C. Barba, deceased, and MANUELA LUJAN BARBA nka MANUELA B. ROBLES,** | **DECISION AND ORDER (Defendant Lujan's Rule 12(b)(6) Motion to Dismiss)** |
| **Defendants.** | |

This matter came before the Honorable Dana A. Gutierrez on May 12, 2021 for a hearing on Defendant Annie Salas Lujan's ("Defendant Lujan") Rule 12(b)(6) Motion to Dismiss ("Motion to Dismiss"). Present via Zoom were Attorney Ray Cruz Haddock representing Defendant Lujan and Attorney Jeffrey A. Cook representing Plaintiff Juan Camacho Pangelinan ("Plaintiff"). Upon a review of the applicable law, the arguments presented by the parties, and in consideration of the proceedings thus far, the Court hereby grants Defendant Lujan's Motion to Dismiss with leave to amend.

## PROCEDURAL BACKGROUND

This matter arises out of Plaintiff's Complaint for Constructive Trust filed on April 13, 2020. After being served with the Complaint and Summons, Defendant Lujan filed a Rule 12(b)(6) Motion to Dismiss on August 7, 2020. In response to the August 7, 2020 Motion to Dismiss, Plaintiff filed a First Amended Complaint for Constructive Trust on September 14, 2020.

Defendant Lujan then issued a Notice of Mootness regarding the August 7, 2020 Motion to Dismiss and re-filed a Rule 12(b)(6) Motion to Dismiss on November 12, 2020 ("Motion to Dismiss"). On December 11, 2020, the Court granted a stipulation to extend the opposition and reply due dates to December 17, 2020 and January 7, 2020, respectively. Plaintiff filed his Opposition to the Motion to Dismiss on December 17, 2020. Based on the parties' request and finding good cause, the Court granted stipulations to extend time on the reply brief which ultimately allowed Defendant Lujan to file her Reply by March 29, 2021. Defendant Lujan filed her Reply to Opposition on March 29, 2021. The parties presented oral argument to the Court on May 12, 2021 and the Court took the matter under advisement.

## RELEVANT FACTS

This action arises out of Plaintiff's alleged agreement with Defendant Lujan to purchase Defendant Manuela B. Robles' ("Defendant Robles") interest in three properties based on Defendant Robles' status as the sole heir of the Estate of Gregorio C. Barba. Defendant Lujan is the Administrator of the Estate of Gregorio C. Barba in Superior Court of Guam Case No. PR0111-06.

The First Amended Complaint ("Complaint")[1] alleges that as the sole heir to the Estate of Gregorio C. Barba, Defendant Robles had an interest in three properties, which at one time were held as assets in the Estate of Juan Santos Camacho, the grandfather of Gregorio C. Barba.[2] Compl. ¶ 11-19. The Complaint asserts that Defendant Robles gave Defendant Lujan a Power of Attorney ("POA") after Defendant Robles became an adult on November 2, 2008. *Id.* ¶ 11. After Defendant

---

[1] Plaintiff filed the First Amended Complaint as a matter of right. *See Core Tech. Int'l Corp. v. Hanil Eng'g & Constr. Co.*, 2010 Guam 13 ¶ 53, n. 6. For the purpose of this Decision and Order, when the Court refers to the "Complaint", the court is referring to the First Amended Complaint.

[2] Juan Santos Camacho was the grandfather of Gregorio C. Barba. The Estate of Juan Santos Camacho was before the Superior Court of Guam through Probate Case No. PR0290-46. Manuela Camacho Barba was the mother of Gregorio C. Barba. The Estate of Manuela Camacho Barba was before the Superior Court of Guam in Probate Case No. PR0072-78.

Lujan obtained the POA, Plaintiff alleges that Defendant Lujan approached Plaintiff to inquire if he desired to purchase her daughter's (Defendant Robles') interest in the three properties. *Id.* ¶ 12.

Then, on or about October 2009, Plaintiff and Delbert L. Swegler paid Defendant $10,000.00 as a down payment for their purchase of Defendant Robles' interest in the three properties. *Id.* ¶ 14, Exhibit 1.[3] On or about March 11, 2010, Defendant Lujan deeded Defendant Robles' interest in the three properties to Plaintiff and Mr. Swegler, signing the deeds on behalf of Defendant Robles through her POA. *Id.* ¶ 15, Exhibits 2-4. The three deeds were recorded at the Department of Land Management on November 10, 2010. *Id.* ¶ 17.

Also on November 10, 2010, Plaintiff and Mr. Swegler executed an Amended Promissory Note agreeing to pay Defendant Robles $577,608.00 for her interest in the three properties. *Id.* ¶ 18, Exhibit 5. That same day, Plaintiff alleges that he and Mr. Swegler executed a Mortgage in order to secure the Amended Promissory Note, which has been partially lost or destroyed; however, Plaintiff provides the Court with pages three (3) through thirteen (13) of the Mortgage. Decl. of Juan Camacho Pangelinan, at ¶ 8, Exhibit 7 (Oct. 19, 2020).

Plaintiff alleges that the agreement was that Plaintiff would use his best efforts to sell the lots and upon a sale of the property, he would pay Defendant Robles the agreed upon purchase price of $577,608.00. *Id.* ¶ 20. When Mr. Swegler passed away, Plaintiff purchased his interest in the property from Mr. Swegler's widow. *Id.* ¶ 22.

The Complaint alleges that Plaintiff worked with the Administrator of the Estate of Juan Santos Camacho in order to try to sell one of the three properties at issue (hereinafter the "Lot").[4] *Id.* ¶ 21. In

---

[3] The Plaintiff alleges that Defendant Lujan accepted an additional $18,000 from Mr. Swegler toward the purchase of the properties. Decl. of Juan Camacho Pangelinan, at ¶¶ 5 & 9, Exhibits 2 & 8 (Oct. 19, 2020). One payment in the amount of $3,000 was paid in January 2010, and the second payment of $15,000 was made in November 2010. *Id.*

[4] Lot 2181-4NEW-R1NEW-1, Barrigada, Guam.

3

2017, the Lot was sold for $5,000,000.00 by the Estate of Juan Santos Camacho. *Id.* ¶ 23. The Estate of Juan Santos distributed the money from the sale to the heirs of the Estate, which included the estate for the mother of Gregorio C. Barba, namely the Estate of Manuela Camacho Barba. *Id.*

After the probate of the Estate of Manuela Camacho Barba, the Estate of Gregorio C. Barba's share from the sale of the Lot was $916,666.66. *Id.* Plaintiff's Complaint claims that pursuant to the Amended Promissory Note and the agreement with Defendant Lujan, acting on behalf of Defendant Robles through her POA, $577,608.00 of the $916,666.66 should be given to Defendant Robles, and the remainder, $339,058.66, should be given to Plaintiff. *Id.* ¶ 24. This claim is based on Plaintiff's assertion that he relied on Defendant Lujan's promise that he would be paid the balance of the proceeds over the agreed upon sale price of $577,608.00, that based on this reliance, Plaintiff performed his obligations under the agreement by making his best efforts to sell the property, and that as a direct result of Defendants' fraudulent misrepresentation, Plaintiff suffered damages in the amount of $339,058.66. *Id.* ¶ 30-34. Lastly, Plaintiff claims that by reason of fraud, Defendant Lujan as Administrator of the Estate of Gregorio C. Barba is an involuntary trustee holding the money in constructive trust for Plaintiff. *Id.* ¶ 34.

## DISCUSSION

Defendant Lujan's Motion to Dismiss requests the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Guam Rules of Civil Procedure ("GRCP") for failure to state a claim upon which relief can be granted, or alternatively requests that the Court convert the motion to a Motion for Summary Judgment pursuant to Rule 56 of the GRCP. Defendant Lujan raises several arguments in support of his Motion to Dismiss which are opposed by Plaintiff.

4

## I. Defendant Lujan's Motion Must Be Converted to a Motion for Summary Judgment.

Rule 12(b)(6) of the GRCP allows a plaintiff to assert in a responsive pleading or in a motion that the defendant failed to state a claim upon which relief could be granted. *First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 9. Dismissal pursuant to Rule 12(b)(6) of the GRCP "is not proper unless 'it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* "In ruling on a 12(b)(6) motion, a court's consideration is limited to the complaint, written instruments attached to the complaint as exhibits, statements or documents incorporated in the complaint by reference, and documents on which the complaint heavily relies." *Newby v. Gov't of Guam*, 2010 Guam 4 ¶ 14.

However, in ruling on a Rule 12(b)(6) motion to dismiss, a trial court "must convert the dismissal motion into a summary judgment motion whenever it considers extraneous material outside the pleadings." *Core Tech Int'l Corp. v. Hanil Eng'g & Const. Co., Ltd.*, 2010 Guam 13 ¶ 26-29. Where a plaintiff attaches a declaration to their opposition to a motion to dismiss, the Supreme Court, in *Core Tech v. Hanil*, held that the trial court should consider the attached declarations and other documents and convert the motion to one for summary judgment. *Id.* at ¶ 26, note 4.

Here, Plaintiff submitted two declarations in support of his opposition to the Motion to Dismiss in addition to some exhibits that were not attached to the Complaint. Decl. of Juan Camacho Pangelinan (Oct. 19, 2020); Second Decl. of Juan Camacho Pangelinan (Dec. 17, 2020). Because the Court must consider these documents and the information therein, which were not included in the Complaint and its accompanying exhibits, this Court finds that it must convert Defendant's Motion to a

Motion for Summary Judgment.[5]

## II.    Standard for a Motion for Summary Judgment.

Pursuant to Rule 56(c) of the GRCP, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue exists when "there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Iizuka Corp. v. Kawasho Int'l (Guam) Inc.*, 1997 Guam 10 ¶ 7. The factual dispute must concern a material fact. *Id.* "A 'material fact' is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit . . . [d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Id.* "If the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the [pleadings], but must produce at least some significant probative evidence tending to support the [pleadings]." *Id.* at ¶ 8.

In addition, "the court must view the evidence and draw inferences in the light most favorable to the non-movant." *Edwards v. Pacific Financial Corp.*, 2007 Guam 27 ¶ 7. The court's "ultimate inquiry is to determine whether a 'specific fact' set forth by the nonmoving party, coupled with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Iizuka*, 1997 Guam 10 ¶ 8. This standard will guide the Court in its analysis.

### A.    Whether the Deeds Are Void.

First, Defendant Lujan asserts that the deeds executed by Defendant Lujan are void because

---

[5] However, for clarity, Defendant Lujan's Motion shall continue to be referred to as the "Motion to Dismiss" throughout this decision.

they did not comply with the requirements under 21 GCA § 29166 and 21 GCA § 4105. Motion, at 9.

Title 21 GCA § 29166 provides that:

> Before any person can convey, charge, or otherwise deal with registered land, or any estate or interest therein, as attorney in fact for another, the deed or instrument empowering him so to act shall be filed with the registrar, and a memorial thereof entered upon the original and duplicate copies . . . .

In other words, before a person acting through a power of attorney may convey land, the document granting the person with the power of attorney must be filed with the registrar.

Further, 21 GCA § 4105 provides that "when an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." Defendant Lujan argues that the alleged power of attorney was not filed with the registrar, in violation of 21 GCA § 29166, and that the deeds to not have the subscription of the principal (Defendant Robles) or the subscription of the agent, as attorney in fact (Defendant Lujan), in violation of 21 GCA § 4105. Motion, at 10.

In opposition, Plaintiff argues that despite the requirements of 21 GCA § 29166 and 21 GCA § 4105, the deeds were nonetheless accepted and recorded at the Department of Land Management without the power of attorney document number or the power of attorney document attached to the deeds. Opp., at 6. Therefore, Plaintiff asserts that he had a right to innocently rely on the apparent validity of the deeds. Opp., at 6.

In *Burkhart v. Miranda*, the Guam Supreme Court held a deed to be void when the deed did not comply with the required formalities under 21 GCA § 4105. 2013 Guam 2 ¶ 19-22. In *Miranda*, a mother, Jesusa, executed a general POA to her son, Raymond, in 1987. *Id.* at ¶ 4. Then in 1991, Raymond executed a warranty deed, acting through his POA, granting a property owned by Jesusa (the

7

"Property") to Jesusa's other son, Roland. *Id.* The deed incorrectly identified Raymond as the grantor, but the deed was nonetheless recorded. *Id.* at ¶ 4, 28. Roland lived on the Property for many years until 2007 when Jesusa executed a deed of gift for the Property to her daughter, Rosalinda. *Id.* at ¶ 7. Rosalinda filed a suit for quiet title, among other causes of action, and Roland answered with a counterclaim asserting that as a result of Rosalinda's fraud, Rosalinda should be deemed an involuntary trustee holding the Property in trust for Roland. *Id.* at ¶¶ 7-8.

The *Miranda* Court held definitively that where property is transferred by an agent acting through a POA on behalf of the principal, the deed must subscribe the name of the principal *and* subscribe the name of the agent, designating the agent as the attorney-in-fact. *Miranda*, 2013 Guam 2 ¶ 20-22. The Court ultimately held that "failure to comply with section 4105 renders the deed void." *Id.* at ¶ 22.

Here, Plaintiff does not dispute the content of the deeds, and in fact submits the deeds in support of his Complaint and Opposition. Compl., Exhibits 2-4. The deeds identify "Manuela Lujan Barba" as the "grantor." Compl., at Exhibits 2-4. The purported signor wrote the word "for" before the typed name of Manuela Lujan Barba and there is an indiscernable signature that appears to be initials written above the typed name of Manuela Lujan Barba. *Id.* Therefore, in viewing the evidence in the light most favorable to the Plaintiff, the deeds do not strictly comply with the requirements of § 4105 by subscribing the name of the agent, indicating the agent as the attorney-in-fact for the principal. *See Edwards*, 2007 Guam 27 ¶ 7. Accordingly, the deeds must be rendered void pursuant to 21 GCA § 4105 and the holding in *Burkhart v. Miranda*, 2013 Guam 2.[6]

---

[6] Although *Miranda* did not analyze the effect of noncompliance with 21 GCA § 29166, this Court will note that Plaintiff acknowledged that no instrument granting Defendant Lujan with the POA for Defendant Robles was ever filed with the registrar, as required under 21 GCA § 29166. Such deficiency further supports a finding that the deeds are void.

### B. Even if the Deeds Comply With 21 GCA § 4105, the Deeds Are Void Because Defendant Robles Had No Interest in the Lot.

Even assuming *arguendo* that deeds substantially comply with 21 GCA § 4105, the deeds must be rendered void pursuant to 21 GCA § 1231. Here, in viewing the evidence in the light most favorable to the Plaintiff, Defendant Lujan acted on behalf of Defendant Robles through the alleged POA in order to execute a deed conveying Defendant Robles' *future interest* in a property that was *not*, at the time of the conveyance, yet owned by Defendant Robles.

Title 21 GCA § 1230 provides that "[f]uture interests may pass by succession, will, and transfer, in the same manner as present interests." However, 21 GCA § 1231 specifies that "a mere possibility, **such as the expectancy of an heir apparent, is not to be deemed an interest of any kind.**" (emphasis added). The Guam Supreme Court has recognized the significant difference between a contingent remainder (also referred to as a "contingent future interest" or "enforceable right") and a "mere expectancy" under 21 GCA § 1231. *Taitano v. Lujan*, 2005 Guam 26 ¶¶ 34-41.[7] In *Taitano*, the Court analyzed this difference to determine whether the purported grantor had any sort of "recognizable future interest" that could have been validly transferred to the defendant, where the plaintiff challenged the transfer in a suit for quiet title. *Id.*

---

[7] In *Taitano*, an uncle (Enrique), executed a will in 1978 leaving all of his estate to his nephew, Manuel. Then, in 1980 (before Enrique died), Enrique executed a deed of gift transferring his interest in property condemned by the U.S. government to a different nephew, Rafael. In 1997 (after Enrique died), Enrique's estate, including his Will, were probated, and the interest in the property was distributed to Manuel, pursuant to the Will, through the final decree. In 2001, Manuel executed a Bill of Sale transferring the property to Pedro. In 2004, Pedro filed a quiet title action against Rafael claiming that the 1980 deed of gift executed by Enrique was not a valid transfer of a future interest because "the mere possibility of the return of property condemned by the U.S. . . . is so remote as to be an expectancy and not an interest of any kind" under 21 GCA § 1230. The *Taitano* Court disagreed and held that at the time of the execution of the deed of gift, Enrique held a valid contingent remainder (and not a mere expectancy) because he had an enforceable right to the property, even if the occurrence of the contingency (the return of the property from the U.S. government) was improbable and outside of his control. This was because if the land was returned by the U.S. government, Enrique would have an enforceable right to the property as the original landowner, and he therefore had "an alienable contingent future interest, not a mere possibility, such as the expectancy of an heir apparent." *Taitano v. Lujan*, 2005 Guam 26.

"The term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence . . . [T]he defining characteristic of an expectancy is that its holder has *no enforceable right* to his beneficence." *Id.* at ¶ 38 (internal citations omitted). In *Sepulveda v. Apablasa*, the California Court of Appeals held that a deed purporting to convey the interest that the grantor expected to inherit from his mother's estate upon her death was void as a matter of law. *Sepulveda v. Apablasa*, 77 P.2d 526, 528-29 (Cal. Ct. App. 3d Dist. 1938) (interpreting California Civil Code § 700); *see* 26 John Bourdeau & Sonja Larsen, Cal. Jur. 3d Deeds § 9 (2013) ("An instrument by which an heir apparent purports to convey property of his or her ancestor does not pass legal title, either on execution of the instrument or on the subsequent death of the ancestor[.]").[8]

In *Sepulveda*, a son executed a "purported deed of conveyance" transferring his interest in land which the son believed was held by his mother "in trust for his benefit." The deed stated that the interest in the property, which the son (the grantor) "now has or may hereafter acquire in any manner whatsoever," is "hereby conveyed" to the grantee for consideration not "less than 21.6% of the gross amount or value of said property[.]" *Sepulveda*, 77 P.2d at 528. The California Court of Appeals held that "in so far as the instrument purported to convey [to the grantee] an interest in the property which [the grantor] expected to inherit from his mother's estate upon her death, it was void." *Id.* (citing Cal. Civil Code § 700; *In re Estate of Wickersham*, 70 P. 1076 (Cal. 1902)).

Here, the deeds alleged to have been executed by Defendant Lujan on behalf of Defendant Robles state that "Manuela Lujan Barba . . . hereinafter referred to as 'Grantor', for good and lawful consideration paid by Juan Camacho Pangelinan . . . hereinafter referred to as 'Grantees' . . . do hereby GRANT, BARGAIN, SELL, and CONVEY unto the Grantees, in fee simple . . . all of my interest in

---

[8] In *Taitano*, the Court held that California case law is "persuasive authority in the interpretation of Title 21 GCA § 1231, as that section was derived from California Civil Code § 700. *Taitano*, 2005 Guam 26 ¶ 10, note 10.

Lot 2181-4NEW-R1NEW-1[.]" Like the grantor in *Sepulveda*, Defendant Robles merely had an "expectant interest" in the Lot based on her status as an "heir apparent" to the Estate of Gregorio C. Barba. *See* 21 GCA § 1231.

At the time the deeds were executed, the three properties were held by the Estate of Juan Santos Camacho, the grandfather of Gregorio C. Barba. Compl. ¶ 11-23. Although Defendant Robles may have hoped that her grandmother's estate (the Estate of Manuela Camacho Barba) and her father's estate (the Estate of Gregorio C. Barba) would receive an interest in the three properties through intestate succession (or by will), this hope did not give Defendant Robles an "enforceable right" to the property, but rather qualified her as a "heir apparent" under 21 GCA § 1231. *See Sepulveda*, 77 P.2d at 528-29. As an "heir apparent," Defendant Robles had no "interest of any kind" in the property held by the Estate of Juan Santos Camacho. 21 GCA § 1231.

Accordingly, even assuming all the facts as alleged by Plaintiff are true, the Court finds that the deeds purporting to convey Defendant Robles' "expectant interest" in the three properties are void as a matter of law.

### C. Whether the Deeds Are Evidence of an Agreement to Convey the Property.

At the hearing on the Motion to Dismiss, Plaintiff argued that if the Court finds that the deeds are void, then the deeds should alternatively be considered as evidence of an agreement between the parties. Min. Entry, at 10:22:30 AM-10:32:23 AM (May 12, 2021). In response, Defendant Lujan asserted that under this type of claim, Defendant Lujan in her capacity as the Administrator of the Estate of Gregorio C. Barba is the wrong party to be sued. *Id.* at 10:32:29 AM-10:28:28 AM.

In *Miranda*, the Guam Supreme Court held that even where the deeds were void the trial court, on remand, should still consider the issue of whether the deeds constituted an agreement to convey the

property. *See Miranda*, 2013 Guam 2 ¶ 27. However, because Defendant Lujan, acting through her POA for Defendant Robles, attempted to convey Defendant Robles' "expectancy" interest in the three properties, 21 GCA § 1230 must additionally void any purported agreement between the parties.

In *In re Wickersham's Estate*, the California Supreme Court held a contract to be void where a party attempted to transfer an "expectancy" rather than an enforceable future interest. *In re Wickersham's Estate*, 70 P. 1076 (Cal. 1902) (interpreting California Civil Code § 700). In *Wickersham's Estate*, a son executed a contract to sell his present interest in his father's estate (who had died and whose estate had been opened) and his future interest in his mother's estate (who had not yet died) for the sum of $28,000. *Id.* The Court held that although the contract operated as a transfer of the son's "then existing interest in his father's estate," the contract was "legally void" in so far "as it purported to convey his expectant interest in his mother's estate." *Id.* at 1077-78. Based on this, the Court reasoned that the son "therefore still remained the legal owner of that interest [in his mother's estate.]" *Id.* at 1078.

Here, similar to the son in *Wickersham's Estate*, Defendant Lujan, acting on behalf of Defendant Robles, attempted to enter into a contract to sell Defendant Robles' "expectancy" interest in the three properties. Like the deeds, at the time the Amended Promissory Note was executed, the three properties were held by the Estate of Juan Santos Camacho, the grandfather of Gregorio C. Barba. Compl. ¶ 11-23.

As previously noted, at that time, Defendant Robles' hope that she would one day inherit an interest in the three properties did not give Defendant Robles an "enforceable right" to the property, but rather qualified her as a "heir apparent" under 21 GCA § 1231. *See In re Wickersham's Estate*, 70 P. at 1077-78. As an "heir apparent," Defendant Robles had no "interest of any kind" in the property held

by the Estate of Juan Santos Camacho. 21 GCA § 1231.

Accordingly, even assuming all the facts as alleged by Plaintiff are true, the Court finds that any alleged agreement to sell Defendant Robles' "expectant interest" in the three properties is "legally void" and Defendant Robles is therefore still the "legal owner of that interest." *In re Wickersham's Estate*, 70 P. at 1077-78. However, although there can be no claim for enforcement of a void contract, the claim based on fraud may survive.

### D.    The Statute of Limitations As to the Claim Based on Fraud.

Although the deeds and any purported agreement is void, the commencement of the statute of limitations is still relevant to Plaintiff's remaining claim based on fraud. *See Miranda*, 2013 Guam 2 ¶ 27; *In re Wickersham's Estate*, 70 P. at 1077-78 (where the contract was void, but the Court held that the party could still recover based on principles of equity, estoppel, or by pursuing a claim of fraud).

Defendant Lujan asserts that Plaintiff claims are time barred by the statute of limitations, citing to 7 GCA § 11305(d).[9] Motion, at 6. Title 7 GCA § 11305(d) provides that an action for relief on the ground of fraud or mistake must be brought within three years of discovering the fraud or mistake. Defendant Lujan asserts that all the documents in support of Plaintiff's claim were executed on or around 2010 and that Plaintiff was aware of the issues surrounding the documents when Mr. Swegler sued Plaintiff regarding funds from the sale of one property in Civil Case No. CV0946-12.[10] Motion, at 7.[11]

---

[9] The Court notes that Defendant Lujan actually cites to 7 CGA § 11303(d), but in looking at the substance of Defendant Lujan's quotation, the Court will consider this a clerical error and will evaluate the correct citation.

[10] *Belen Z. Swegler, As Executrix of the Estate of Delbert L. Swegler v. Juan A.C. Pangelinan.*

[11] Defendant Lujan requests the Court to take judicial notice of the complaint filed in CV0946-12 and the notice to take the deposition of Manuela Lujan Barba filed in CV0946-12. Motion, at 7. However, "a court may only take judicial notice of the truth of facts in certain documents, including past court orders, findings of fact and conclusions of law, and judgments." *In re N.A.*, 2001 Guam 7 ¶ 58. As for all other submissions in a case file, "a court should only take judicial notice of the fact of their existence, and not the truth of the facts within." *Id.* Thus, while the Court can take notice that these two documents exist, the Court may not take judicial notice regarding whether or not any

---

In opposition, Plaintiff asserts that he is not seeking enforcement of a contract, but rather seeks his share of the proceeds of the sale of the land based on his ownership interest in the land. Opp., at 2. Thus, Plaintiff argues that he was unaware that he would not be paid his share of the proceeds until 2019, when Defendant Lujan filed the final petition to distribute the assets of the Estate of Gregorio C. Barba in PR011-06. Further, Plaintiff argues that the lawsuit in CV0946-12 did not put Plaintiff on notice that he would not be paid when the property was sold, noting that in order to settle CV0946-12, Plaintiff paid Mr. Swegler's widow $50,000 to buy out Mr. Swegler's interest in the property, which is evidenced by a Quitclaim Deed. Opp., at 4; Decl. of Juan Camacho Pangelinan, ¶ 13, Exhibit 9 (Oct. 19, 2020). Plaintiff additionally cites to Defendant Lujan's deposition in CV0946-12 wherein Defendant Lujan stated that based on the agreements and deeds she executed on behalf of Defendant Robles, it was her understanding that Plaintiff and Mr. Swegler are the owners of the three properties. Opp., at 5.

In applying 7 GCA § 11305(d) to a claim of fraud, the *Miranda* Court held that "the statute of limitations will begin to run when the plaintiff suspects or should suspect that his injury was caused by wrongdoing or that someone has done something wrong to him." 2013 Guam 2 ¶ 26. Such a discovery "occurs when a plaintiff could have discovered the wrongful acts with reasonable diligence." *Id.* In finding that no events had occurred to put the alleged grantee on notice of fraud in the *Miranda* case, the Supreme Court relied on facts such as: 1) although the grantee did not sign the deed, he "duly recorded it"; 2) the grantee obtained loans, such as mortgages, and title documents based on the warranty deed; and 3) the grantor frequently referred to the Property as "[the grantee's] place." *Id.* at

---

allegations in the documents are true. Therefore, the Court will not use these documents to find that based on the lawsuit in CV0946-12, Plaintiff should have known that he was injured as a result of some fraud or wrongdoing by the Defendants in the case at bar.

14

¶¶ 28-30.

Here, in viewing the evidence and drawing all inferences in favor of the Plaintiff, the Court finds that Plaintiff's claim based on fraud is not barred by the statute of limitations. *See Edwards*, 2007 Guam 27 ¶ 7. The Plaintiff duly recorded the deeds and the deeds were recorded at the Department of Land Management. Compl., at ¶ 17. Additionally, although the purported mortgage was partially lost or destroyed and was never recorded, the Plaintiff declared in support of his opposition to the Motion to Dismiss, that he and Mr. Swegler executed a mortgage regarding their payment for the properties, and Plaintiff attached pages three through thirteen of the mortgage to his declaration. Decl. of Juan Camacho Pangelinan, at ¶ 6-8, Exhibit 7 (Oct. 19, 2020).

As evidence that the lawsuit against Plaintiff in CV0946-12 did not in fact put Plaintiff on notice that there were issues with the agreement with Defendant Lujan and Defendant Robles, Plaintiff paid Mr. Swegler's wife $50,000.00, on or about September 14, 2018, to settle the suit and buy out what Plaintiff believed to be Mr. Swegler's interest in the three properties. Opp., at 3; Decl. of Juan Camacho Pangelinan, at ¶ 13. Furthermore, Defendant Lujan apparently swore under oath during her deposition in CV0946-12 that her understanding was that based on her agreements with Plaintiff and Mr. Swegler, the owners of the three properties were Plaintiff and Mr. Swegler. Second Decl. of Juan Camacho Pangelinan, Exhibit 3 (Dec. 17, 2020).

Once the Inventory and Appraisement was filed in PR0111-06, Plaintiff filed his Proof of Claim and Objection on October 3, 2019. Compl., at ¶ 7. It was not until January 10, 2020 that Defendant Lujan served her Rejection to Creditor's Claim on Plaintiff's counsel. *Id.* at ¶ 8. Therefore, in viewing the evidence in the light most favorable to the Plaintiff, this Court must conclude that Plaintiff could not have suspected that an injury was caused by some wrongdoing to him until the

rejection of his creditor's claim was served on January 10, 2020. Thus, the Court finds that the statute of limitations for Plaintiff's claim of fraud commenced on January 10, 2020. As Plaintiff initiated this lawsuit with the filing of his original Complaint on April 13, 2020 and First Amended Complaint on September 14, 2020, this Court finds that Plaintiff timely asserted his claim based on fraud within the required three year statute of limitations.

### E. Whether Plaintiff Has Sufficiently Pleaded His Claim Based on Fraud.

In response to Defendant Lujan's assertion that the Complaint should be dismissed for failure to state a claim upon which relief may be granted and for failure to name the proper parties, Plaintiff requested leave to amend his First Amended Complaint. Min. Entry, at 10:22:30-10:39:06 AM (May 12, 2021). Generally, fraud claims are subject to heightened pleading standards under Rule 9(b) of the GRCP. *See Ukau v. Wang*, 2016 Guam 26 ¶ 35.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity" and that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." Rule 9(b) does not require a plaintiff to prove a claim of fraud at the pleading stage. *Taitano v. Calvo Finance Corp.*, 2008 Guam 12 ¶ 16. "Rather, what is required is that a plaintiff set forth his claim with sufficient detail to provide notice to defendants as to what particular fraudulent action is being alleged." *Id.* (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 1989)). This has been described as the "who, what, when, where, and how" requirement. *Ukau*, 2016 Guam 26 ¶ 47. The elements of fraud are: "1) a misrepresentation; 2) knowledge of falsity (or scienter); 3) intent to defraud to induce reliance; 4) justifiable reliance; and 5) resulting damages." *Ukau*, 2016 Guam 26 ¶ 36.

In the Complaint, Plaintiff identifies the Defendants as 1) Annie Salas Lujan, as Administrator

of the Estate of Gregorio C. Barba, and 2) Manuela Lujan Barba nka Manuela B. Robles. Plaintiff's

Complaint does not identify or list separate causes of action, but the allegations pertaining specifically

to fraud can be found in the following paragraphs of the Complaint:

> 31. Plaintiff relied on this promise as evidence by the warranty deeds, the amended promissory note and the mortgage, and spent seven (7) years actively trying to sell said property, including his labor to clear property and labor to find buyers for said property, in conjunction with John Camacho and various realtors.
> 32. Plaintiff perfumed all of his obligations under his agreement with Defendant LUJAN on behalf of Defendant BARBA to try to market the property.
> 33. As a direct result of Defendants' fraudulent misrepresentation, Plaintiff suffered damages in the amount of $339,058.66.
> 34. By reason of the fraudulent and otherwise wrongful manner in which Defendant LUJAN acted, Defendant BARBA nor the Estate has any equitable right, claim or interest in the $339,058.66, and Defendant LUJAN as Administrator of the Estate of Gregorio C. Barba is an involuntary trustee holding the money in constructive trust for Plaintiff with the duty to convey the same to Plaintiff.

Compl., at ¶¶ 31-34 (Sept. 14, 2020).

Regarding the elements of fraud, first, nowhere in the Complaint does Plaintiff specify what

"misrepresentation" has been made by either Defendant. Second, nowhere in Plaintiff's Complaint

does he allege that either Defendant knew that their conduct was wrongful or fraudulent. Third,

Plaintiff does not allege that either Defendant had an intent to defraud Plaintiff in order to induce

reliance on their promises.[12] As to the fourth and fifth elements, Plaintiff does allege sufficient facts

supporting his assertion that he justifiably relied on these promises based on the Amended Promissory

Note, the deeds, and the representations of the Defendants, and Plaintiff identifies his damages.

Compl., at ¶¶ 31-34.

Although the Opposition to the Motion to Dismiss and the supporting documents may provide

---

[12] As a related issue to these three missing elements, nowhere in the Complaint does Plaintiff allege that any wrongdoing was committed by Defendant Lujan acting in her capacity *as the Administrator to the Estate of Gregorio C. Barba.*

17

clarity as to some of these elements, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *Morgan Distributing Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). A contrary approach would allow a party to unilaterally amend a complaint at will by simply raising a point in a brief. *See Morgan Distributing Co.*, 868 F.2d at 995. "The proper means of raising claims that have inadvertently not been raised in the complaint is an amended complaint, not a brief in opposition to a motion to dismiss." *Sansom Committee v. Lynn*, 366 F.Supp. 1271, 1278 (E.D. Pa. 1973). Therefore, the Court may not consider the facts or arguments raised in opposition to the Motion to Dismiss when determining whether the claim of fraud has been sufficiently pleaded.

Here, in viewing the evidence and drawing all inferences in favor of the Plaintiff, the Plaintiff has failed to plead at least three essential elements of fraud in his Complaint, xand therefore has not met the particularity requirements of Rule 9(b) of the GRCP. *See Edwards*, 2007 Guam 27 ¶ 7. Having found that the cause of action based on fraud has not been sufficiently pleaded, the Court must now determine whether to dismiss the claim with or without prejudice.

### F. Whether Plaintiff May Be Granted Leave to Amend.

Rule 15(a) of the GRCP provides that a party must seek leave from the court to amend a complaint once an answer has been filed, but requires that such leave "shall be freely given when justice so requires." Under Guam law, leave to amend should be liberally granted. *Arashi & Co. v. Nakashima Enterprises, Inc.*, 2005 Guam 21 ¶ 16 (citing *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962)). *Foman* directs courts to review whether certain factors are present which may mitigate against leave to amend, including: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

18

opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Arashi*, 2005 14 Guam 21 ¶ 16. Further, "an outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Arashi*, 2005 Guam 21 ¶ 16 (quoting *Foman*, 371 U.S. at 182).

Here, although Plaintiff has already amended the complaint once as a matter of right, no amendments have been previously allowed by this Court. An examination of the record reveals no evidence of bad faith, undue delay or a dilatory motive. Further, although the Complaint does not plead fraud with the requisite specificity, the Complaint does sufficiently put the Defendants on notice of the facts and events upon which such claim is based. Therefore, the Court does not find that leave to amend would impose undue prejudice on either defendant. *See Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) (holding that absent an affirmative showing of prejudice, a presumption exists in favor of granting leave to amend).

Lastly, an amendment would not be futile. Plaintiff requested leave to amend to plead the claim of fraud with more specificity and to name the proper parties as defendants. Min. Entry, at 10:22:30-10:39:06 AM (May 12, 2021). If Plaintiff is able to adequately amend to sufficiently assert his claim of fraud against the proper parties, the claim may survive a motion to dismiss or a motion for summary judgment. Accordingly, this Court finds that "justice so requires" that the Court grant Plaintiff leave to amend. *See* Rule 15(a).

### G. Remaining Issues Are Moot.

Based on the Court's aforementioned findings, the remaining issues asserted by Defendant Lujan are moot. First, Defendant Lujan argues that unjust enrichment is a required element to establish a constructive trust and that Plaintiff has failed to show or plead how the Estate of Gregorio C. Barba

would be unjustly enriched by disposing of the assets in the Estate. Motion, at 10-11. However, the Guam Supreme Court has held that a constructive trust is often imposed in cases of fraud (among other types of claims). *Guam Bar Ethics Comm. v. Maquera*, 2001 Guam 20 ¶ 31. Therefore, if Plaintiff cures the deficiencies by amending the Complaint, the remedy of a constructive trust may possibly be imposed.

Second, Defendant Lujan asserts that Plaintiff's claim seeking compensation for his efforts to sell the Lot is barred by the statute of frauds because Plaintiff has not provided any written document that shows what the essential agreement was between Plaintiff and Defendant to compensate Plaintiff for the sale of the property. Motion, at 12. However, although the statute of frauds may prevent a claim for enforcement of a contract, the statute of frauds will not apply to prevent claims of fraud based on justifiable reliance or unjust enrichment. *Peterson v. Carrington Mortgage Services, LLC*, 2011 WL 6934551, at *11-12 (Cal. Ct. App. 6th Dist. 2011) (citing *Monarco v. Lo Greco, et al.*, 220 P.2d 737 (Cal. 1950)).

Third, Defendant Lujan argues that even if the agreement is not barred by the statute of frauds, Plaintiff is barred from collecting compensation for acting as a real estate broker without the required licensing to act as a real estate broker or salesman, as prohibited by 21 GCA § 104112. However, a violation of § 104112 is statutorily classified as *criminal* in nature, as opposed to civil.[13] As the Court is without jurisdiction to address criminal violations unless prosecuted by the People of Guam by and through the Attorney General's Office, it would be improper for the Court to dismiss the Complaint based on this argument.[14]

---

[13] 21 GCA § 104112 provides that: "Any person acting as a real estate broker or real estate salesman without a license . . . shall, upon conviction thereof, if a natural person, be guilty of a **petty misdemeanor**[.]" (emphasis added).

[14] *See* 5 GCA § 30104 (Attorney General as Public Prosecutor); 8 GCA § 5.60 (Prosecuting Attorney Defined); *Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973) (where the plaintiff brought an action against a defendant alleging a

## CONCLUSION

For the reasons set forth herein, the Court hereby **GRANTS** Defendant Lujan's Rule 12(b)(6) Motion to Dismiss, which has been converted to a motion for summary judgment. However, the First Amended Complaint is **DISMISSED WITHOUT PREJUDICE** and the Court hereby **GRANTS** Plaintiff's request for leave to amend the First Amended Complaint. Should Plaintiff choose to amend the First Amended Complaint, the Court **ORDERS** Plaintiff to file his Second Amended Complaint within **thirty (30) days** from the entry of this Decision and Order on the docket.

**SO ORDERED**: _____AUG 1 0 2021_____

**HONORABLE DANA A. GUTIERREZ**
**Judge, Superior Court of Guam**

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

_V. Cook_

_R. Hartdock_

Date: _____ Time: 8/10/21

**Joseph Bamba, Jr.**
Deputy Clerk, Superior Court of Guam

---

violation of the Texas Penal Code and the U.S Supreme Court upheld the dismissal of the claim because "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.").